(No. 13374.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RALPH MADIA, Plaintiff in Error.

*Opinion filed October 23, 1920.*

CRIMINAL LAW—*when conviction should be reversed and defendant given a new trial.* A judgment of conviction for an assault with intent to murder should be reversed and the defendant given a new trial where his testimony establishing an alibi is corroborated by the unimpeached testimony of his employer, and no attempt is made to identify the defendant as one of the assailants but only to show that he was near the place of the assault.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ANTON T. ZEMAN, Judge, presiding.

EUGENE A. MORAN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, EDWARD C. FITCH, and GEORGE C. DIXON, (EDWARD E. WILSON, and WILLIAM SCOTT STEWART, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

March 19, 1920, plaintiff in error, Ralph Madia, was convicted in the criminal court of Cook county of assault with intent to murder Bartholomew Murphy. He prosecutes this writ of error to reverse the judgment of conviction on the ground that the evidence is insufficient to support it.

Bartholomew Murphy was the proprietor of a roadhouse near Hillside, in Cook county, Illinois. He was accustomed to draw twice a month from the Melrose Park bank sufficient money to cash his customers' pay checks. July 16, 1919, he drew out $2600 in cash, and with this money on his person he started about 10:30 o'clock in the morning, with a horse and buggy, to his roadhouse. When about two and a half miles from Melrose Park he noticed a car driven into the ditch at the roadside. A little distance beyond this point two men, one tall and the other short, jumped from behind some bushes and pointed revolvers at him. The tall man was dressed in light-colored mechanic's overalls and both men had handkerchiefs over their faces. Murphy whipped his horse into a run and got away. Five shots were fired at him, one of which cut a flesh wound in his hip. In a few minutes he heard a high-powered machine following him. He drove his horse into a side road and saw a light-colored car pass him at high speed.

Five days later, during the noon hour, plaintiff in error was arrested near Harrison and State streets, in Chicago, as he came out of a cigar store. He was in his working clothes, with his sleeves rolled up. The officers who arrested him had in their possession a stolen Marmon roadster, and they picked plaintiff in error up on a charge of stealing this car. Two or three days later they drove the car to Melrose Park, where they heard about the shooting. Murphy was not able to identify plaintiff in error as one of the parties who assaulted him.

Joseph Porter, a sixteen-year-old boy employed on his father's farm, between Hillside and Melrose Park, saw a light-colored Marmon car being driven up and down the road in front of the farm just before the shooting occurred. The car was moving slowly and it appeared that one of the men was teaching the other how to drive. Porter heard the shooting and immediately afterwards saw two men go down the road and get into a car and start off in the direc-

tion Murphy had taken. He was not able to identify plaintiff in error, but said he was about the same size as the taller of the two men he saw in the road.

C. Echle, marshal of Melrose Park, was helping repair a truck on the roadside about a mile west from Hillside. He heard the shooting and then heard a car approaching Hillside at high speed. He stood in the road and tried to stop the car, but it passed him going fifty or sixty miles an hour. It was a gray, mouse-colored Marmon car and there were two men in it.

G. E. Chappelle, proprietor of the Broadway Garage, in Melrose Park, saw Murphy at the bank in Melrose. On his way to the bank Chappelle walked opposite a Marmon car which was being driven along the street very slowly. The car was the standard light-colored roadster put out by the Marmon company, and appeared to be the same car that was brought to Melrose Park a week later by the Chicago police. There were many other Marmon cars in the community, but his attention was attracted to this one because one of the men seemed to be teaching the other how to drive. There were two men in the car and Chappelle identified plaintiff in error as the one at the wheel. He testified that he walked alongside the car for about a block, and that he had a good opportunity to look at the driver, who was dressed in a khaki-colored suit of mechanic's overalls, was bareheaded and had very bushy hair. He saw a scar on the driver's cheek similar to a scar on the cheek of plaintiff in error. He heard of the shooting shortly after it happened. Chappelle was positive in his statement that plaintiff in error was the man he saw driving the Marmon roadster in Melrose Park on the morning of the shooting.

Plaintiff in error testified that he was twenty-three years old and lived with his mother and her family at the corner of Dearborn and Harrison streets, in Chicago; that he was employed as an interior decorator and had been so employed for four years; that his employer was Sam Jamalli; that

on July 16, 1919, they were decorating the apartment of Mrs. Annie Caralo in a building owned by the P. Nacey estate; that they started the job on the 12th day of July and that it took them six days to finish it; that they worked every day from eight o'clock in the morning to twelve o'clock noon and from one o'clock to five o'clock in the afternoon; that on July 16, 1919, according to a receipted statement, he bought for his employer some decorating supplies from Henry Bosch & Co. and paid cash for them; that he remembered making this trip about nine o'clock in the morning and that he was not gone from his work more than half an hour. He detailed other places where he had been steadily employed for several weeks before the hold-up. He further testified that the only car he had driven was a Ford truck, which he drove when he worked for a supply company; that he had never been in Melrose Park at any time, and that he was not in Hillside during the month of July, 1919. His employer, Sam Jamalli, corroborated his testimony regarding his employment in every detail.

This case should be submitted to another jury. There is no witness who attempts to identify plaintiff in error as one of the two men who made the assault on Murphy, and only one witness identifies him as the party who was driving a light-colored Marmon roadster in Melrose Park on the morning of the assault. This witness had no previous acquaintance with plaintiff in error and had never seen him before, and therefore might easily have been mistaken in the identity of the driver, especially when the distance between the witness and the driver of the automobile is considered. On the other hand, the employer of plaintiff in error cannot possibly be mistaken in his testimony. Unless his testimony is unmitigated perjury plaintiff in error is not guilty. No effort was made to prove Jamalli's testimony false. Plaintiff in error and his employer gave the places of their residence and their occupation, and state circum-

stances which upon another trial will enable the State to show whether they have told the truth or have testified falsely. Considering all of the testimony for the People in its most favorable light, the best that can· be said for it is that it equally balances that for the defense. It does not show the defendant to be guilty beyond all reasonable doubt, and safety and justice require that the cause should be tried again. See *Lincoln* v. *People,* 20 Ill. 365, and *Duffy* v. *People,* 197 id. 357.

The judgment of the criminal court is reversed and the cause is remanded.

*Reversed and remanded.*